Oral argument not to exceed 15 minutes per side. Mr. Garish for the Plaintiff Appellate. Good morning. May it please the Court, Jeffrey Garish on behalf of AmeriShure. I'd like to reserve three minutes for rebuttal. Yes. This is a contract case in which AmeriShure seeks to hold Swiss Re. to its contractual obligation to provide AmeriShure reinsurance for losses AmeriShure is required to pay. Swiss Re. is seeking to avoid honoring its contractual obligations on collateral estoppel grounds based on an arbitration to which it was not even a party. And so the issue before the Court is whether a defendant in arbitration who prevailed on balance but lost on a single issue is collaterally estopped from litigating that issue against a party that was not even involved in the arbitration. Now we've briefed several issues, several reasons why we think two elements are not met. And even if all the elements were met, we think collateral estoppel doesn't apply. I want to talk about all those three things if I have time. But I want to start with something a little bit different, which is that none of the public policies behind, none of the reasons for collateral estoppel are advanced in any way by applying it in this case. Well, if the contracts are exactly the same, the insurance contracts, the reinsurance contracts, why wouldn't there be a policy interest in having one adjudication of the issue of whether you should be able to have defense costs above the amount of the policy covered? Well, the contract that's under interpretation is the insurance policy should arm strong. And I think the question, Your Honor, that you're asking is the reason, there is a policy in general that supports collateral estoppel when the issue is the same. But it doesn't apply when a party doesn't have a full and fair opportunity to litigate and when there's no mutuality of estoppel here. Why did you not have a fair opportunity to litigate the prior arbitration against Allstate? Well, there's three reasons. Number one, we had no ability to appeal. And this Court has twice... No, I'm talking about litigate. Let's not talk about appeal. Why did you not have a fair opportunity to litigate the arbitration? Well, if you set aside the inability to appeal, and this Court has twice said... Okay. Okay, I'm sorry. If you could answer my question. Yeah. Well, because there were several issues. It was one of a grab bag of issues. This was one of the issues that was litigated, was it not? It was. Well, not necessarily. You had an opportunity to litigate this issue. We had an opportunity to litigate whether defense costs are outside limits. But the focus was on a different issue. Okay, the focus. But still, this issue was litigated in the prior arbitration. Well, we don't know that the arbitrators didn't even address it. Does the arbitrators have to address in detail everything? Or can they render a more general award? For purposes of the arbitration, of course they can do the latter. But for purposes of collateral estoppel, it makes a difference when they haven't even addressed the issue. Well, so in issue preclusion, in general, if you had a district court as the decision maker, you would expect that the district court would decide a particular issue in order for issue preclusion to apply. Yes. So why was that not done here? Well, we don't know whether it was done or not because they didn't say anything about the drop-down issue that we didn't stress, which I have conceded we didn't stress it. They didn't even address it. You can presume that they did address it and you argued it. It was one of the main issues in the case. I mean, isn't there a presumption that it was decided? Maybe. Maybe, Judge Griffin. That may be right. How did you overcome the presumption? Because circumstances matter. And that's the bottom line in this case. This is a very unique case where the issue was the specific contractual interpretation was never even addressed by the arbitrators and it wasn't the focus of Amerisher's argument. So we don't even know whether they actually addressed it. Because they did address the other issue that was our main focus, which was endorsement number two. That they did address. We don't know whether they even addressed the drop-down issue. Okay. I mean, if you didn't focus on an important issue, I mean, why should we care up here? If your attorney did not do his job before the arbitration, the arbitrators, and focus on all the important issues, I mean, why should that be to your advantage? Because we were arbitrating against all states. And we had a specific exposure with all states. Or they had exposure to us. Why should a party assume that whatever, even if they win on most issues, if they lose on one, they're collaterally stopped against everyone else that's not even a party to the arbitration. The parties are entitled to assume in an arbitration that the arbitration finding isn't going to go outside that dispute. Well, did it go outside the dispute? Well, you're doing... Do the arbitrators exceed their authority? Is that what you're arguing? I don't think so. Well, the one issue that we lost in the arbitration is we wouldn't be able to collaterally stop Swiss Re on the issues we won. That's why this is a one-way ratchet against Amerisher. We can't hold them responsible. That's why they're using it defensively, and that's what they're allowed to use. Well, under the case law, they're using it offensively, Judge Griffin. But you said you seek to hold them liable, and they're using it as a shield, not a sword here. Well, not if you look at Warda v. C.I.R. and the Leitchon case. They both say if they're using it to try to avoid proving an affirmative defense, they're using it as an offensive weapon. They're using it to try to avoid having to prove voluntary payments. That's offensive use under both Warda and Leitchon, and they have no answer to that. So the thing that strikes me that we need to do is to focus in on what was the issue that was decided in the arbitration. And we have an interim award and a final award and an opinion from the Northern District of Illinois. So your contention is that the issue is the drop-down issue? Yes. And that's nowhere discussed in any of those three items that I mentioned. Correct. But what did the district judge in the Northern District of Illinois decide? Did he not decide that you needed, that you were wrong in paying defense costs in excess of the policy amounts? Yeah, on two of the policies. And on one, he said that we were right. And on balance, we prevailed. This is why I think it's important, because we were the, Amerisher was the party that moved to have this confirmed. So we didn't choose to arbitrate. We moved to have it confirmed. And now a non-party to the arbitration is asking that we be collaterally estopped. And what were we supposed to do? Their argument is, well, you should have known collateral estoppel would prevent you from litigating any issue you lost against a complete stranger, so you shouldn't have moved to have it confirmed. But why did you lose the issue that you lost in the arbitration? Well, the only reasoning they gave in the interim award was endorsement number two. And that was the argument that said if something's not covered, that means we have to pay it. And they said not covered means not covered under the terms. They disagreed with our argument on the endorsement and didn't address the drop-down issue. So looking at, we have this May 6th interim award and the final award. Where is the issue decided, do you think? You know, this is a technical area that I find, as a layperson in insurance, I find difficult to even understand what the arbitrators were saying. You and me both, Judge Moore. They didn't say anything about it. I think the final award is what decides the issue. That was the final. And it said in there it supersedes any interim award. Right. But where in the final, so I have the final award. It's literally a page. Yeah. Where is the issue decided? Is it in part three? All states shall issue payment to a merisher of certain amounts. Is that where the issue is decided, or is it somewhere else? No, I think that's right, Judge Moore. I don't have it in front of me, and I apologize, because they didn't address it. That's what makes it a tough question. They never addressed it. Normally, if we have courts involved, we would expect that the district court, the trial court, would explain what the issue is that it is deciding, before we would give issue preclusion effect to it. And I struggle to see where the issue is decided by this arbitration panel, and then even by the district court, which is applying a very limited review power because it's an arbitration. Exactly. Well, they never did address the issue. You're not going to find anywhere in either interim or the final where they address the issue, which is a problem. And, again, that's one of the reasons why it just doesn't fit. I mean, even if you disagree that we had a full and fair opportunity and that they're using it offensively, we've cited several cases from this court that said, even if all the elements are met, you shouldn't apply collateral estoppel where doing so causes manifest injustice because of a change in circumstances, because the proceedings in the prior action were not as extensive. I mean, this case is a poster child for not applying collateral estoppel, especially to someone that wasn't even a party to the arbitration. They weren't even involved. And, respectfully, if this court affirmed collateral estoppel, it would be the first case in the history of American jurisprudence where collateral estoppel was applied, where the first proceeding was an arbitration, the estopped party was a defendant, the estopped party prevailed on balance, and it was the one that moved to confirm it. And then they're estopped against a complete stranger that wasn't even involved. No case has ever held that under even close circumstances. And I promise if there was a case out there, Mr. Sheridan's very competent legal team would have found it. It just doesn't exist. Do we have Sixth Circuit published cases that say that a final award of an arbitrator is entitled to issue preclusion effect in a subsequent diversity case? Yes. W.J. O'Neill held that. And that's really all they have. Was that published? There were two W.J. O'Neill cases. I thought the first one that was published, correct me if I'm wrong, the first one that was published was saying no claim preclusion. We're now on issue preclusion. And it was not published, right? Okay. That's true. There's never been any case since in both Davis v. Gallagher and Bradley v. Reno, and Judge Griffin, you were on the Bradley panel, both decisions said that a non-appealable order has no preclusive effect. So that, to me, ends it. Because the only case they can point to, there was another older case, Judge Moore, where the prior proceeding was an arbitration, and it was the Central Transport v. First Phase case in 1991, where all they said was even though the arbitration doesn't have the same appeal right, they did challenge that they sought to move to have it set aside. But we don't know the circumstances under that. We have no idea what the arbitration agreement said in terms of allowing them to have it set aside, which is why it's completely different. So this arbitration was not subject to appeal? Is that what you're saying? Well, it was subject to 10 U.S.C. 9 that says if there was corruption or fraud. There is a potential appeal. You told me that the case is dispositive because the arbitration here wasn't subject to appeal, but it was. I mean, you just admitted it. But there's no appeal on the merits. Setting aside an arbitration, I'm sorry to interrupt. I know, it's very limited. But do you have any authority that, let's see, arbitration is not valid if you cannot appeal the merits of it? I mean, that would kind of upset the whole scheme of arbitration, would it not? Well, especially when you're talking against a non-party. The Vandenberg case out of Supreme Court. Getting back to, I mean, the purpose of arbitration is actually to settle disputes, not to keep litigating it. And that's one reason that the merits are subject to very strict limits. That's also why it's a bad idea to extend collateral estoppel to a non-party, because nobody is going to agree to litigate if they know that any issue they lose, even if they win on balance, if they lose one issue, they're going to be forever estopped against someone that's not even involved. They're either not going to agree to arbitrate, or at a minimum, they're going to require more formality, a better opportunity for review. One last question. Do you contend that this issue is governed by federal law or Michigan law? Probably Michigan law. We've cited both, but Michigan law probably governs. Does Michigan law differ from federal law? Not really, not really. So it's like a false conflict. Yeah, I think that's right, Judge. But Monat is the main Michigan Supreme Court case, and it identified several factors about whether there's a full and fair opportunity to litigate that are very helpful here. And Monat also talked about the lack of mutuality as required where there's engamesmanship going on. This isn't gamesmanship on the part of a marisher. I'm sorry. Thank you.  Thank you, Your Honors. Mark Sheridan on behalf of Swiss Re America Corporation. Your Honors, I'd like to begin by trying to address some of the questions, Judge Moore and Judge Griffith, that you had. And if I may, Judge Moore, you were particularly focusing on what was the issue in the arbitration and where exactly can we find that. And you correctly identified the two places you can find it. One is the district court opinion that confirmed the arbitration award. And the other is the final arbitration award. So let me talk about each of those. At page five of the district court's decision, the district court said, and I quote, the crux of the dispute was why a marisher seemed to be paying defense costs in addition to, rather than within, policy limits. So that's what the district court identified as the issue. On page one of its decision, the district court described that as the crux of the dispute in the arbitration. In the arbitration, Judge Moore, if you refer to that final arbitration award, which I believe you can find at page 102 of the record, the issue was decided in paragraph 1A, Your Honor. There in that paragraph, the arbitration panel says, okay, we've got many contracts here. Let's talk about one set of them, which includes the marisher contracts that coincidentally Swiss Re also reinsured. And they say for those contracts, quote, defense costs incurred by a marisher are payable within limits. Okay? So that's exactly where the panel decided the crux of the dispute. Okay, but then that's in 1A with respect to F.B. Wright certificates. Yes, Your Honor. And paragraph 2 is talking about the 1982 Armstrong certificates. Yes, Your Honor. If I may direct you back to paragraph 1, it certainly does begin with saying with respect to F.B. Wright certificates. But if you look at the third line of that paragraph, it says, as well as Armstrong facultative certificates, such and such, in the 79 and 80 year, in the 80 or 81 year, that's the Armstrong insurance policy that all state reinsured and that Swiss Re reinsured. So that paragraph 1A applies to our contracts. That applies to the pre-1981, right? Yeah, I think pre-1982. Yes, Your Honor. Sure. A says pre-1981. Correct, correct. I'll say pre-1982 as you did. So how do we know what's involved in this case now? Is it the 1982 or is it the pre-1982? Oh, it's the pre-1982. That's in the complaint. That's not in dispute. Okay. Yes, correct. Swiss Re did not reinsure the later in time certificates. So Swiss Re is not concerned about the arbitration ruling for the later in time insurance policies. Okay. So with respect to then this particular paragraph 1A. Yes. What do you contend is the issue? The issue is whether those Amerisher insurance policies that were issued to Armstrong pay defense costs inside or outside of their limits. That's the issue. That's what the district court identified as the issue and that's the issue. What about this drop down? Oh, there are several arguments to that issue. Why is that not a separate issue? Oh, because it's just a different argument to the same issue. Amerisher, the question is how are defense costs paid, within or in addition? Amerisher had a bunch of arguments as to why they should be paid in addition. They had the drop down argument. They had the defense endorsement argument. They had other arguments. All the arguments went to that same issue. Wouldn't we expect, if we had a district court decision as opposed to an arbitration decision, wouldn't we expect the district court to say we're granting judgment to Allstate because the drop down argument, I'll give you that, the drop down argument does not allow Amerisher to win. But we don't have anything like that deciding the discrete subparts. All we have is an overall conclusion here in this one paragraph. Well, we do have a bit more, Your Honor, which is that in the last paragraph of the final award, the panelist says all other claims for relief are denied. So very much like a district court might grapple with the arguments that were most forcefully presented and write a decision that mentions that and then say we've considered the other issues and that doesn't change our position. So do you think that if a court simply said we've considered the other issues, you used that word there, if we've considered the other issues and we rule for one side, would you think issue preclusion should apply in that context? Your Honor, I don't know. That's not the issue here because we're not talking about separate issues. We're only talking about separate arguments going to that issue. And the district court here, Judge Goldsmith, did a very good job in explaining that. Amerisher is confusing arguments with issues. Case law is replete with holdings saying that it doesn't matter how many new arguments a party can come up with. If the arguments go to the same issue and that issue was resolved in the prior arbitration or the prior proceeding, it doesn't matter. You can come up with new arguments until the cows come home. I guess the concern that I'm sort of driving at is how do you distinguish between issues and claims? Because I grant you that if it were claim preclusion, you wouldn't need to discuss the subparts, but it would bind parties to everything that could even be considered within a claim. But how do you decide that an issue is encompassed within something? Sure. And I think in this case, it may be difficult in some cases. Not here, Your Honor. The issue, it's set forth if you're not satisfied with what the district court from the Northern District of Illinois did by identifying what it called the central issue, the crux of the dispute, being defense class insider out. To me, that's very reliable. But all you have to do is go back and look at what's in the record and see how the parties argued in the arbitration. Now, admittedly, that's somewhat limited. We tried to get the full arbitration record in, and we had to file a motion to compel, and we didn't get the full arbitration record in. But there is evidence of what was argued in the arbitration. And the district court in the Northern District of Illinois had a full record, and it correctly identified what the issue is. So could that have been appealed in the Northern District of Illinois, or was it a limited review on the motion to vacate and the motion to confirm? The parties came to the Northern District of Illinois on motions to vacate and motions to confirm. So it was a limited review. But it was still a judicial review, and this court and courts across the country, including Michigan, have repeatedly said that that's sufficient to render the prior arbitration ruling to have collateral estoppel effect. Would there be issue preclusion if there hadn't been any motion to vacate? No, Your Honor. Confirmation or not is irrelevant to whether a prior arbitration award has collateral estoppel effect. It's not dependent on confirmation. And is that the federal law or the state law? I don't have cases in front of you. That wasn't something that we briefed, but I'm familiar from other cases. I believe it's federal law, Your Honor. What do you contend is the law that we should apply? Well, I agree with Mr. Garish that in very large part there is overlap between federal and Michigan law. However, I guess if push came to shove, I would apply federal law. I don't have any issue in mind where that would make a big difference. But the arbitration was not conducted pursuant to state law. And both parties did go to a federal court to get it confirmed. And there is some authority, although not in the Sixth Circuit, I believe in the Seventh Circuit, that says that when you're looking at the collateral estoppel effect of an arbitration award that happened to be confirmed by a federal court, you apply federal law. But I'm not sure it makes a big difference at the end of the day. If I may have, if I could, just to continue to address some of the issues that Judge Griffith, you raised, you said, well, or no, excuse me, let me, I think I've addressed those issues. Let me just begin, although I know I'm almost at the end of my argument here. You know, the arbitration panel was composed of three industry executives, collectively with 100 years' experience between them. One of them was appointed by a merisher. They unanimously came to the same decision. And that's the decision, Judge Moore, that we just looked at in the final award at page 102 of the record. Defense costs incurred by a merisher are payable within the limits. And for that reason, the panel said, therefore, a reinsurer doesn't have to reimburse a seedant if the seedant decides to be gratuitously paying in addition to the limits. Yes, a merisher had an opportunity to get judicial review. It would have been limited. But courts, this court and other courts across the country, have said that that's sufficient to, you know, to base collateral estoppel on. A merisher makes no arguments, and Judge Griffith, I think this was one of your questions. A merisher makes no arguments that there was anything particularly or uniquely unfair about the arbitration. They don't allege fraud or bias. They don't allege that they had limited discovery. They don't allege that the panel refused to hear a witness or refused to receive evidence or cut short their arguments, none of that. A merisher more or less concedes that there's case law kind of against it on a lot of issues, but it says, oh, well, you know, this is an equitable doctrine. You know, circumstances matter, and we should have an exception here. But what was so uniquely wrong with the Allstate arbitration? Why is that uniquely – why is that called for an exception? I suppose hypothetically that the Allstate matter involved a very small amount of money. And a merisher's position here is that on balance the arbitrator's award was reasonable, and therefore they moved to confirm. But they had to, you know, take the loss with the gain on that. So why – hypothetically, let's say the Allstate matter is very small in dollars amounts, and now the Swiss Re amount is huge. So should a merisher under those circumstances be tasked with moving to vacate part of that initial Allstate arbitration award? Well, Your Honor, I wouldn't put it as should they be tasked with seeking to vacate because that is a high standard. In order to avoid, under your view, in order to avoid collateral estoppel. Well, in order to avoid collateral estoppel, they should have won the issue in the arbitration. But I – so I – Because lower courts or arbitrators can make mistakes. Correct. Correct. So they could have vacated. And the Supreme Court can make mistakes. But the key to the analysis, in my view, is not whether they obtain a vacater, although that would have accomplished the thing – the goal you're identifying. But they could have also won below. But to answer your question more directly, absolutely collateral estoppel should apply in those situations as long as they had a full and fair opportunity to litigate that issue. But more to the point, Your Honor, you phrased your question as a hypothetical, and you're exactly right. It is a hypothetical. That's not our case. Okay? If you look at page – if you look at Swiss Re's summary judgment motion below, Exhibit 17, page 2. I don't have a record site because that exhibit was filed under seal and it didn't get its own, you know, record site. But it's Exhibit 17, page 2 of Swiss Re's motion for summary judgment. You'll see the dollars that were at issue there. You'll see that the all-state certificates are listed there. A million dollars for – there's $2 million certificates at issue pre-'82. Okay? The limits, a million and a million. Okay? The issue was whether defense costs should be piled on top of those million-dollar limits. Defense costs were running two-to-one. In other words, for every $1 Amerisher paid to settle an asbestos claim, they spent $2 defending that claim. So, in other words, the million-dollar certificate that all-state had at issue there was – the issue, inside or outside, defense costs inside or outside, that's an additional $2 million. So it would take a $1 million certificate and turn it into a $3 million certificate. Twice for two certificates. A lot of dollars. So your question truly was a hypothetical. That's not our case. That's not our case. In fact, that's kind of the point I was trying to make is that there's nothing exceptional about this. The only – What was your insurance for? Three and a half million. Three in total. Do you know how much the defense costs are? Not specifically, other than there's indications that defense costs were running two-to-one. In the Swiss Re? Yes. Swiss Re reinsured the same policy as all states, so it's the same fact. Yes, Your Honor. But if I could just finish with this point, the only – and perhaps it's the most important point I'd like to make. The only arguments that Amerisher makes as to why they're entitled to an exception of what would otherwise be the ordinary application of collateral estoppel, they just point to generic aspects of the prior arbitration. Oh, there was limited judicial review. Well, maybe, but that's true in all arbitrations. Oh, there's this honorable engagement clause in the all-state arbitration, which means that the arbitrators were relieved of strict judicial formalities. Okay, but that's common in all arbitrations. Amerisher only points to generic aspects of the arbitration as problems, but in order to get an exception to the general rule, you can't rely on common characteristics that are applicable in all cases. To me, that's the most significant point that perhaps didn't come through in the briefs, but I think that you should consider. I can ask one more question. I think the case rises and falls of whether the collateral estoppel is being invoked defensively or offensively. They say it's offensively. Can you respond to that? Yes, I would be pleased to, Your Honor. I would refer you to, I think, probably what the best authority on this should be, which is the U.S. Supreme Court, and that's in its Mendoza decision. And if I can just – here we go. So in Mendoza, which is – there's one – they set forth a standard. How is it used defensively? When is it used defensively? When it's used defensively, you don't need mutuality, okay? It's one sentence, Your Honor, and if I may, I'll read it once, and then if I may, I'll read it a second time inserting the parties so it makes a little more sense. The standard from the U.S. Supreme Court is when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or different party. Now, let's put the parties into that equation, okay? When a defendant, Swiss Re, seeks to prevent a plaintiff, a marisher, from relitigating an issue that the plaintiff, a marisher, has previously litigated unsuccessfully in another action, the arbitration, against the same or a different party, all state. That's our case. That standard is our case. That's defensive collateral estoppel. That's what we're doing. To me, that's an easy question. The case may turn on it, but it's not a difficult issue in my opinion. Thank you. Thank you. Thank you. Let me try to address the points in reverse. Mendoza wasn't even cited in their brief, so if it helped them on this issue, I think they would have cited it. A marisher was not the plaintiff in the arbitration. That's the point. That's why the traditional offensive versus defense doesn't apply here, and this is a declaratory action. Does it matter the term of the party, whether you're plaintiff or defendant? Isn't it important that it was litigated and you lost? I mean, is that really crucial, just the label of whether you're a plaintiff in the first action or a defendant or a counterplaintiff or a counterdefendant? For purposes of offensive versus defensive, it does. The labels mean everything? All they can point to is the labels. That's it. Sorry. Is an offensive or defensive looking at this action, who's using it and how? And so here, Swiss Re is using it defensively to prevent you from relitigating something that you litigated, in quotes, in the Allstate matter. It's not so limited. If you look at Manat, Manat talks about the purpose of relaxing mutuality, and that is if you have someone that sues the defendant, loses, then tries their luck against another defendant. That's what it's trying to prevent. We didn't sue Allstate, and we didn't lose. This is the other thing. He's saying, well, all they had to do was not lose. We didn't lose. We won. They said you lost on the defense. I was glad, Judge Moore, you asked a little bit about the hypothetical I gave in my brief. A party has $300,000 issues. They lose on one, but they win on two. He's saying we have to move to have the whole thing set aside. We can't move to have it vacated in part. He's not saying you have to move to set it aside. I mean, you have to have a right to have judicial review. That's all. To invoke collateral estoppel. You don't have to invoke the right. I don't think anybody says that. But what is a merisher supposed to do? They didn't. You're supposed to win the arbitration for one. Well, we did. We won on balance. We had one issue. That's important. You agreed to the arbitration somewhere along the line, and once you agreed to arbitration, you agreed to the decisions. I mean, that's basically it. Against Allstate. I'm sorry to interrupt. Against Allstate. We didn't agree to anything with Swiss Re. Well, you're supposed to know what the law is, and the law of collateral estoppel is that it may be invoked defensively. Maybe your attorneys need to be the claim against your attorneys if they don't know what that law is. Well, they've never cited a single case applying collateral estoppel in a case like this. They can't point to anything. And the dollars are much more significant in this case. We're hearing from other reinsurers that are telling us because of this district court decision, we're now pulling our reinsurance, too. This is a massive problem for a merisher based on an arbitration against Allstate where none of these reinsurers were even a party. When you say they're pulling their reinsurance, you mean they're saying that the amount of their policy has been exhausted and so they won't be paying for defense costs? Is that what they're saying? What they're saying is they're trying to seize on the minor victory that Allstate got and saying defense costs are paid within limits under this arbitration ruling. And if I can quote from the Vandenberg case, it says, when collateral estoppel is invoked by a non-party to the private arbitration, the doctrine does not serve the policy against harassment by a backslash of litigation. In that case, the doctrine is asserted not to protect one who has already once prevailed against the same opponent on the same cause of action, but simply to gain vicarious advantage from a litigation victory won by another. That's what they're doing. And Allstate didn't really even win. On balance, we won. So what were we supposed to do? And I've exceeded my time and I apologize. That's okay. Thank you. Thank you both for your argument. The case will be submitted.